**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**

_____

| | |
|---|---|
| **CECILIO GUTIERREZ-MORALES,** ) | |
| **MARCOS MORON-BLAS,** ) | |
| **OMAR PEREZ-MORALES,** ) | |
| **ALTOBELI PEREZ-DE LEON,** ) | |
| **RAMIRO PEREZ-DE LEON,** ) | |
| **JUSTINIANO RIOS-PEREZ,** ) | |
| **ISAEL SANCHEZ-SOLIS,** ) | |
| **HERMINIO DE JESUS** ) | |
| **VELAZQUEZ-CIFUENTES, and** ) | |
| **DERNY RODRIGUEZ-VAZQUEZ,** ) | |
| ) | **Civil Action No. _____** |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **EARL LEE PLANK JR., EARL LEE PLANCK** ) | |
| **JR. d/b/a PLANCK FARM, EARL LEE** ) | |
| **PLANCK JR. d/b/a B.S. LAND AND CATTLE** ) | |
| **COMPANY, LLC, B.S. LAND AND CATTLE** ) | |
| **COMPANY, LLC, CHAD PRICE, JOHN D.** ) | |
| **WATKINS, JOHN D. WATKINS d/b/a HIGH** ) | |
| **POINT FARMS LLC, and HIGH POINT** ) | |
| **FARMS, LLC.,** ) | |
| ) | |
| **Defendants.** ) | |

_____ )

## PLAINTIFFS' COMPLAINT

### PRELIMINARY STATEMENT

1.     This is an action to recover damages for unpaid wages, breach of contract, and

unlawful passport withholding brought by nine Mexican H-2A farm workers (collectively

referred to as "Plaintiffs") who were recruited, hired, employed, and housed by Defendants to

perform agricultural work in tobacco pursuant to the federal H-2A visa program in the 2013-

2014 and 2014-2015 seasons.

2.      Defendants began participating in the H-2A visa program in 2013 or 2014, seeking to bring Mexican workers to work as laborers at their tobacco farms in or around Nicholas County, Kentucky. Defendants lured Plaintiffs to the United States with fraudulent promises of good working and living conditions at a fair wage.

3.      Throughout the course of Plaintiffs' employment in the 2013-2014 and 2014-2015 tobacco seasons, Defendants repeatedly disregarded the promises they had made to Plaintiffs and the federal government, and instead violated Plaintiffs' rights under both federal law and the terms of their work contracts.

4.      Defendants paid Plaintiffs at an hourly rate well below what they had promised, made illegal deductions from their pay, and failed to maintain accurate records of Plaintiffs' hours, causing Plaintiffs to earn well below the promised contract wage and even less than the federal Fair Labor Standards Act ("FLSA") minimum wage of $7.25 per hour.

5.      Defendants housed Plaintiffs in sub-standard facilities, exposing them to unsanitary and inhumane living conditions.

6.      Defendants unlawfully confiscated Plaintiffs' passports and other personal documents in an attempt to prevent Plaintiffs from leaving their employment before the end of the season.

7.      As a result of Defendants' numerous violations of law, Plaintiffs seek redress through declaratory relief and monetary damages.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), Trafficking Victims Protection Reauthorization Act ("TVPRA") claims pursuant to 18 U.S.C. § 1595(a), and all federal claims pursuant to 28 U.S.C. § 1331 (federal question

jurisdiction) and 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce).

9.      This Court has jurisdiction over Plaintiffs' contract claims pursuant to 28 U.S.C. § 1331 because the claims turn on substantial questions of federal law. The Court also has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

10.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Central Division of the U.S. District Court for the Eastern District of Kentucky.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

13.     Each Plaintiff is a citizen of Mexico who, at all times relevant herein, was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), commonly referred to as the "H-2A program."

14.     Defendant Earl Lee Planck, Jr. (hereinafter "Planck") is a natural person residing in Nicholas County, Kentucky. Defendant Planck conducted business at some of the times relevant to this action during the 2013-2014 season as "Planck Farm," an unincorporated entity, and at some of the times relevant to this action during the 2014-2015 season as "B&S Land & Cattle CO LLC," or "B.S. Land and Cattle Company, LLC," which had its principal place of business in Nicholas County, Kentucky, during the 2014-2015 season.

15.     Defendant B.S. Land and Cattle Company, LLC is a duly registered limited liability corporation in the state of Kentucky, which had its principal place of business in

Nicholas County, Kentucky during the 2014-2015 tobacco season. During the 2014-2015 tobacco season, Defendant Planck was its registered agent, and Defendant Planck and Suzanna M. Planck were its sole members.

16.     Under Kentucky law, Defendant Planck, as a manager of Defendant B.S. Land and Cattle Company, LLC, is individually liable for his own negligence, wrongful acts, and misconduct as alleged herein.

17.     Defendant John D. Watkins is a natural person residing in Nicholas County, Kentucky. Defendant Watkins conducted business at some of the times relevant to this action during the 2014-2015 tobacco season as "High Point Farms, LLC," which had its principal place of business in Nicholas County, Kentucky.

18.     Defendant High Point Farms, LLC is a duly registered limited liability corporation in the state of Kentucky, which had its principal place of business in Nicholas County, Kentucky during the 2014-2015 tobacco season. During the 2014-2015 tobacco season, Defendant Watkins was its registered agent, and Defendant Watkins and Kevin C. Watkins were its sole members.

19.     Under Kentucky law, Defendant John D. Watkins, as a manager of Defendant High Point Farms, LLC, is individually liable for his own negligence, wrongful acts, and misconduct as alleged herein.

20.     Defendant Chad Price is a natural person residing in Nicholas County, Kentucky.

## FACTS

### A.  H-2A Petition Process

21.     An agricultural employer in the United States may import foreign workers to perform labor of a temporary nature if the U.S. Department of Labor ("DOL") certifies that: (1)

there are insufficient available workers within the United States to perform the job; and (2) the

employment of foreign workers will not adversely affect the wages and working conditions of

similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(a)(1). Foreign workers

admitted in this fashion are commonly referred to as "H-2A workers."

22.     Agricultural employers seeking the admission of H-2A workers must first file a

temporary employment certification application with the U.S. DOL. 20 C.F.R. § 655.130.

23.     This application must include a job offer, commonly referred to as a "clearance

order" or "job order," complying with applicable regulations, which is used in the recruitment of

both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)–(c). The H-2A regulations establish the

minimum benefits, wages, and working conditions that must be offered in order to avoid

adversely affecting U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122, 655.135.

**B. 2013-2014 Season Recruitment of Mexican H-2A Workers**

24.     Alleging a lack of available, documented agricultural workers in the area of their

operations, Defendants Planck, Planck d/b/a Planck Farms (hereinafter jointly the "the 2013

Planck Defendants"), and Price (hereinafter collectively "the 2013-2014 Defendants") jointly

filed an application to employ temporary foreign workers through the H-2A program during the

2013-2014 tobacco season.

25.     The 2013-2014 Defendants' initial temporary labor certification application for

the 2013-2014 tobacco season sought admission of 25 workers for employment from May 22,

2013 through February 15, 2014, and was anticipated to provide workers with an average of 40

hours of employment per week.

26.     As part of its temporary labor certification application as described in paragraphs

22 through 25, the 2013-2014 Defendants submitted to the U.S. DOL a clearance order

containing a certification that the clearance order contained all material terms and conditions of the job and described the actual terms and conditions of employment being offered, as required by 20 C.F.R. § 653.501(d)(3).

27.     The clearance order of the 2013-2014 Defendants for the 2013-2014 season, as described in paragraph 26, explicitly and implicitly incorporated the U.S. DOL regulations at 20 C.F.R. § 655 Subpart B.

28.     The U.S. DOL accepted this application for foreign labor certification, and the clearance order filed with it as described in paragraph 26 through 27, with respect to the 2013-2014 tobacco season.

29.     The 2013-2014 Defendants recruited H-2A workers from Mexico, including Plaintiffs Gutierrez-Morales, Altobeli Perez De-Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Rodriguez-Vazquez to fill some of the positions offered in the clearance order for the 2013-2014 tobacco season.

30.     Plaintiff Gutierrez-Morales first heard about the job through his cousin, and his cousin had learned about the job through a man named Melvin, who had worked for Defendant Planck before and was recruiting workers for the 2013-2014 season. Plaintiff Gutierrez-Morales had to pay Melvin a fee to get the job. He was then informed by a "licenciado" regarding when and where to report to the U.S. Consulate in Monterrey, Mexico for his visa processing appointment.

31.     Plaintiffs Altobeli Perez-De Leon and Ramiro Perez-De Leon learned about the job opportunity in Kentucky working for the 2013-2014 Defendants through their cousin, Melvin. They each had to pay him a recruitment fee.

32.     Plaintiff Velazquez-Cifuentes had previously worked for Defendant Planck and

was recruited to come back to work for the 2013-2014 Defendants for the 2013-2014 season.

33.     Plaintiff Rodriguez-Vazquez learned about the job opportunity in Kentucky

working for the 2013-2014 Defendants through an acquaintance, to whom he had to pay a

recruitment fee.

**C. 2013-2014 Season Plaintiffs' In-Bound Travel**

34.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon,

Velazquez-Cifuentes, and Rodriguez-Vazquez traveled to Monterrey, Mexico, at their own

expense, for their visa processing appointments.

35.     Some Plaintiffs had to obtain passports specifically for the purpose of obtaining

their H-2A visas at their consular processing appointment.

36.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon,

Velazquez-Cifuentes, and Rodriguez-Vazquez incurred expenses for the visa processing fee,

hotel stay in Monterrey, food, and bus tickets to travel from their homes to the United States.

37.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon,

Velazquez-Cifuentes, and Rodriguez-Vazquez all took out loans in Mexico of nearly $1,000 to

cover their expenses for traveling to the United States to work for Defendants for the 2013-2014

season.

38.     While still in Monterrey, Mexico, Plaintiffs Gutierrez-Morales, Altobeli Perez-De

Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Rodriguez-Vazquez were informed

about the terms and conditions of the Kentucky tobacco job, as stated in the job clearance order,

which included but were not limited to, pay at a rate of at least $9.80 per hour, free utilities and

housing in compliance with federal standards, and reimbursments for travel expenses.

39.     But for Plaintiffs' employment with the 2013-2014 Defendants, Plaintiffs would

not have incurred the expenses described in paragraphs 34 through 37.

40.     The expenses incurred by Plaintiffs described in paragraphs 34 through 37 were necessary to Plaintiffs' employment with the 2013-2014 Defendants.

41.     The expenses incurred by Plaintiffs described in paragraphs 34 through 37 primarily benefitted the 2013-2014 Defendants.

42.     The 2013-2014 Defendants did not reimburse Plaintiffs for the expenses described in paragraphs 34 through 37.

43.     The expenses described in paragraphs 34 through 37 functioned as de facto deductions from Plaintiffs' wages during their first work week with the 2013-2014 Defendants.

44.     The deductions described in paragraphs 34 through 37 caused Plaintiffs to earn less than the adverse effect wage rate ("AEWR") and the federally mandated minimum wage during their first workweek with the 2013-2014 Defendants.

45.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Rodriguez-Vazquez entered the United States pursuant to their H-2A visas on or about May 31, 2013.

46.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes arrived in Kentucky on or about June 2, 2013, and commenced working, primarily on tobacco farms owned or operated by the 2013 Planck Defendants, on or about June 3, 2013.

47.     Plaintiff Rodriguez-Vazquez arrived in Kentucky on or about June 2, 2013, and commenced working, primarily on tobacco farms owned or operated by Defendant Price, on or about June 3, 2013.

**D.  2013-2014 Season Housing Conditions**

i.      **The Planck Defendants' Housing Locations**

48.      Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were housed on property owned or operated by the 2013 Planck Defendants during the 2013-2014 season.

49.      During the course of the 2013-2014 season, the 2013-2014 Defendants provided housing to Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes that did not comply with applicable housing regulations.

50.      Amongst other housing violations, Plaintiffs were not provided with actual beds, but were only given wooden slabs with a thin mat on top or wooden box springs in lieu of actual beds. Some of the workers resorted to sleeping on the floor or buying actual mattresses at their own expense.

51.      The 2013-2014 Defendants provided housing to Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes that was infested with rodents and insects, including fleas or bed bugs.

52.      The 2013-2014 Defendants provided housing to Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes that did not have screens on the windows.

53.      The 2013-2014 Defendants failed to provide Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes with adequate storage for their personal belongings.

54.      The 2013-2014 Defendants provided housing to Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes that lacked basic necessities that Plaintiffs had to purchase and provide on their own, including cleaning and pest

control supplies, plates and utensils, and light fixtures. The workers had to provide their own

maintenance for anything that needed to be repaired in the housing.

55.     Throughout the 2013-2014 season, the 2013-2014 Defendants illegally charged

Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-

Cifuentes for electricity at the housing facility on a monthly basis.

**ii.     Defendant Price's Housing Location**

56.     Plaintiff Rodriguez-Vazquez was housed on property owned or operated by

Defendant Price during the 2013-2014 season.

57.     During the course of the 2013-2014 season, the 2013-2014 Defendants provided

housing to Plaintiff Rodriguez-Vazquez that did not comply with applicable housing regulations.

58.     Amongst other housing violations, Plaintiff Rodriguez-Vazquez was not provided

with an actual bed, but only a wooden box spring with an inflatable mattress on top.

59.     The 2013-2014 Defendants provided housing to Plaintiff Rodriguez-Vazquez that

was infested with rodents and insects, including fleas or bed bugs.

60.     The 2013-2014 Defendants provided housing to Plaintiff Rodriguez-Vazquez that

did not have screens on the windows.

61.     The 2013-2014 Defendants failed to provide Plaintiff Rodriguez-Vazquez with

adequate storage for his personal belongings.

62.     The 2013-2014 Defendants provided housing to Plaintiff Rodriguez-Vazquez that

lacked a functioning shower, forcing Plaintiff to bathe out of buckets.

63.     The 2013-2014 Defendants provided housing to Plaintiff Rodriguez-Vazquez that

lacked adequate heat, causing Plaintiff Rodriguez -Vazquez to suffer during the winter months.

64.     The 2013-2014 Defendants provided housing to Plaintiff Rodriguez-Vazquez that

leaked when it rained hard.

**E. 2013-2014 Season Employment**

    **i.    Workers at the Planck Defendants' Farm**

65.    Throughout the 2013-2014 tobacco season, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon and Velazquez-Cifuentes were jointly employed by the 2013-2014 Defendants.

66.    While working for the 2013-2014 Defendants, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were engaged in the production of goods for commerce as that phrase is used in the FLSA.

67.    While working for the 2013-2014 Defendants in 2013-2014, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were employed by these Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

68.    The 2013-2014 Defendants were the employers of Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes, during the 2013-2014 tobacco season, within the meaning of the FLSA, 29 U.S.C. § 203(d).

69.    While working for the 2013-2014 Defendants in 2013-2014, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were each an "employee" of the 2013-2014 Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

70.    By choosing to voluntarily participate in the H-2A program in 2013-2014 as joint employers, the 2013-2014 Defendants were jointly and severally liable for meeting all federal regulations that pertain to the H-2A program and for complying with Plaintiffs' clearance orders/H-2A contracts of employments.

71.     The 2013-2014 Defendants were the employers of Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes, during the 2013-2014 tobacco season, within the meaning of 20 C.F.R. § 655.103(b).

72.     While working for the 2013-2014 Defendants in 2013-2014, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were each an "employee" and "H-2A worker" of the 2013-2014 Defendants within the meaning of 20 C.F.R. § 655.103(b).

73.     The terms of the work contracts under which the 2013-2014 Defendants employed Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were determined and controlled, in part, by federal law.

74.     The terms of work the 2013-2014 Defendants offered to Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes in the 2013-2014 seasons included, among other things:

    i.      the terms offered in the clearance order described in paragraphs 26 through 27;

    ii.     the contents required by law to be contained in all H-2A job offers as set forth in the regulations at 20 C.F.R. § 655.122; and

    iii.    the legally required assurances and obligations of H-2A employers as set forth in the regulations at 20 C.F.R. § 655.135.

75.     Specifically, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes' work contracts with the 2013-2014 Defendants offered, among other things, the following terms:

    i.      Wages equal to the higher of the AEWR, which was $9.80 to $10.10 per hour in Kentucky during the 2013-2014 tobacco season, the prevailing hourly wage rate,

the prevailing piece rate, or the FLSA minimum wage rate;

ii.    Housing, at no cost to the workers, that met DOL OSHA migrant housing standards, 29 C.F.R. § 1910.142;

iii.    Provision of all tools, supplies, and equipment required to perform their job duties, without charge or deposit;

iv.    Reimbursement, at the 50% point of the contract's term, of Plaintiffs' transportation and subsistence costs from their homes in Mexico to the place of employment;

v.    Payment of the Plaintiffs' transportation and subsistence costs from the place of employment to their homes in Mexico at the end of the contract period, or at the time of termination without cause;

vi.    Payment when wages were due;

vii.    Maintenance of accurate and adequate records with respect to workers' earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by the worker, the time the worker began and ended each workday, the rate of pay, the worker's earnings per pay period, the worker's home address, and the amount of and reasons for any and all deductions taken from the worker's wages;

viii.    Pay stubs with each worker's total earnings for the pay period, the worker's hourly rate and piece rate of pay, the hours of employment offered to the worker, the hours actually worked by the worker, an itemization of all deductions made from the workers' wages, the units produced daily if piece rates are used, the

beginning and ending dates of the pay period, and the employer's name, address and federal employer identification number ("FEIN"); and

ix.     Employer compliance with all applicable federal, state, and local laws and regulations, including specifically the requirement that the employer not hold or confiscate the workers' passports, visas, or other immigration documents.

76.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were paid by check, without being given any other pay or hours records by the 2013-2014 Defendants.

77.     Only after they arrived in the United States were Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes informed by the 2013-2014 Defendants, or their agents, that they were only going to be paid $6.00 per hour for their work for the majority of the 2013-2014 season.

78.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were not paid by the 2013-2014 Defendants for all of their compensable work time.

79.     For the hours for which the 2013-2014 Defendants did compensate Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes, they were only paid at an hourly rate of $6.00 per hour, prior to any deductions, for the majority of the 2013-2014 season.

80.     For some workweeks in the 2013-2014 season, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were paid by the 2013-2014 Defendants via a combination of a piece rate and an hourly rate.

81.     The 2013-2014 Defendants did not pay Plaintiffs at least the minimum wage for

each workweek during which Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were employed as required by the FLSA, 29 U.S.C. § 206(b).

82.     Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were not reimbursed for any of their in-bound travel expenses, effectively bringing their first workweek's wages even further below the AEWR and the federal minimum wage required by the FLSA, 29 U.S.C. § 206(b).

83.     Upon information and belief, the 2013-2014 Defendants failed to maintain pay records for the 2013-2014 season, as required by the FLSA, 29 U.S.C. § 211(c).

84.     During the course of Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes' employment in 2013-2014, the 2013-2014 Defendants failed to comply with material terms and conditions of employment offered to Plaintiffs in the clearance order submitted to the U.S. DOL and in the H-2A regulations governing Plaintiffs' contracts at 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135.

85.     During the course of Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes' employment, the 2013-2014 Defendants:

    i.     Failed to pay Plaintiffs wages equal to the higher of the AEWR, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate, in compensation for all of Plaintiffs' hours worked;

    ii.     Failed to provide Plaintiffs housing that met DOL OSHA standards;

    iii.     Failed to provide Plaintiffs with tools, supplies, and equipment required to perform their job duties, without charge or deposit;

    iv.     Failed to reimburse, at the 50% point of the contract's term, Plaintiffs'

transportation and subsistence costs from their homes in Mexico to the place of employment;

v.      Failed to pay Plaintiffs' transportation and subsistence costs from the place of employment to their homes in Mexico at the end of the contract period, or at the time of termination without cause;

vi.     Failed to pay Plaintiffs when wages were due;

vii.    Upon information and belief, failed to maintain accurate and adequate records with respect to each Plaintiff's earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by each Plaintiff, the time each Plaintiff began and ended each workday, the rate of pay, each Plaintiff's earnings per pay period, each Plaintiff's home address, and the amount of and reasons for any and all deductions taken from each Plaintiff's wages;

viii.   Failed to provide pay stubs to each Plaintiff with the Plaintiff's total earnings for the pay period, the Plaintiff's hourly rate and piece rate of pay, the hours of employment offered to the Plaintiff, the hours actually worked by the Plaintiff, an itemization of all deductions made from the Plaintiff's wages, the units produced daily if piece rates were used, the beginning and ending dates of the pay period, and the employer's name, address and FEIN; and

ix.     Violated applicable federal, state, and local laws and regulations, including by holding or confiscating Plaintiffs' passports, visas, or other immigration documents.

ii.     **Worker at Defendant Price's Farm**

86.     Throughout the 2013-2014 tobacco season, Plaintiff Rodriguez-Vazquez was

jointly employed by the 2013-2014 Defendants.

87.     While working for the 2013-2014 Defendants, Plaintiff Rodriguez-Vazquez was

engaged in the production of goods for commerce as that phrase is used in the FLSA.

88.     While working for the 2013-2014 Defendants in 2013-2014, Plaintiff Rodriguez-

Vazquez was employed by these Defendants within the meaning of the FLSA, 29 U.S.C. §

203(g).

89.     The 2013-2014 Defendants were the employers of Plaintiff Rodriguez-Vazquez

during the 2013-2014 tobacco season, within the meaning of the FLSA, 29 U.S.C. § 203(d).

90.     While working for the 2013-2014 Defendants in 2013-2014, Plaintiff Rodriguez-

Vazquez was each an "employee" of the 2013-2014 Defendants within the meaning of the

FLSA, 29 U.S.C. § 203(e).

91.     By choosing to voluntarily participate in the H-2A program in 2013-2014 as joint

employers, the 2013-2014 Defendants were jointly and severally liable for meeting all federal

regulations that pertain to the H-2A program and for complying with Plaintiff's clearance

orders/H-2A contract of employment.

92.     The 2013-2014 Defendants were the employers of Plaintiff Rodriguez-Vazquez

during the 2013-2014 tobacco season, within the meaning of 20 C.F.R. § 655.103(b).

93.     While working for the 2013-2014 Defendants in 2013-2014, Plaintiff Rodriguez-

Vazquez was an "employee" and "H-2A worker" of the 2013-2014 Defendants within the

meaning of 20 C.F.R. § 655.103(b).

94.     The terms of the work contract under which the 2013-2014 Defendants employed

Plaintiff Rodriguez-Vazquez were determined and controlled, in part, by federal law.

95. The terms of work the 2013-2014 Defendants offered to Plaintiff Rodriguez-Vazquez in the 2013-2014 seasons included, among other things:

  i.   the terms offered in the clearance order described in paragraphs 26 through 27;

  ii.  the contents required by law to be contained in all H-2A job offers as set forth in the regulations at 20 C.F.R. § 655.122; and

  iii. the legally required assurances and obligations of H-2A employers as set forth in the regulations at 20 C.F.R. § 655.135.

96. Specifically, Plaintiff Rodriguez-Vazquez's work contract with the 2013-2014 Defendants offered, among other things, the following terms:

  i.   Wages equal to the higher of the AEWR, which was $9.80 to $10.10 per hour in Kentucky during the 2013-2014 tobacco season, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate;

  ii.  Housing, at no cost to the workers, that met DOL OSHA migrant housing standards, 29 C.F.R. § 1910.142;

  iii. Reimbursement, at the 50% point of the contract's term, of Plaintiff's transportation and subsistence costs from his home in Mexico to the place of employment;

  iv.  Payment of the Plaintiff's transportation and subsistence costs from the place of employment to his home in Mexico at the end of the contract period, or at the time of termination without cause;

  v.   Payment when wages were due;

  vi.  Maintenance of accurate and adequate records with respect to workers' earnings,

including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by the worker, the time the worker began and ended each workday, the rate of pay, the worker's earnings per pay period, the worker's home address, and the amount of and reasons for any and all deductions taken from the worker's wages;

   vii.    Pay stubs with the worker's total earnings for the pay period, the worker's hourly rate and piece rate of pay, the hours of employment offered to the worker, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, the units produced daily if piece rates are used, the beginning and ending dates of the pay period, and the employer's name, address and federal employer identification number ("FEIN"); and

  viii.    Employer compliance with all applicable federal, state, and local laws and regulations, including specifically the requirement that the employer not hold or confiscate the workers' passports, visas, or other immigration documents.

97.    Plaintiff Rodriguez-Vazquez was paid by check, without being given any other pay or hours records by the 2013-2014 Defendants.

98.    Only after he arrived in the United States was Plaintiff Rodriguez-Vazquez informed by the 2013-2014 Defendants, or their agents, that he was only going to be paid $6.00 per hour for his work for the majority of the 2013-2014 season.

99.    Plaintiff Rodriguez-Vazquez was not paid by the 2013-2014 Defendants for all of his compensable work time.

100.    For the hours for which the 2013-2014 Defendants did compensate Plaintiff

Rodriguez-Vazquez, he was only paid at an hourly rate of $6.00 per hour, prior to any deductions, for the majority of the 2013-2014 season.

101.    For some workweeks in the 2013-2014 season, Plaintiff Rodriguez-Vazquez was paid by the 2013-2014 Defendants via a combination of a piece rate and an hourly rate.

102.    The 2013-2014 Defendants did not pay Plaintiff at least the minimum wage for each workweek during which Plaintiff Rodriguez-Vazquez was employed as required by the FLSA, 29 U.S.C. § 206(b).

103.    Plaintiff Rodriguez-Vazquez was not reimbursed for any of his in-bound travel expenses, effectively bringing his first workweek's wages even further below the AEWR and the federal minimum wage required by the FLSA, 29 U.S.C. § 206(b).

104.    Upon information and belief, the 2013-2014 Defendants failed to maintain pay records for the 2013-2014 season, as required by the FLSA, 29 U.S.C. § 211(c).

105.    During the course of Plaintiff Rodriguez-Vazquez's employment in 2013-2014, the 2013-2014 Defendants failed to comply with material terms and conditions of employment offered to Plaintiff in the clearance order submitted to the U.S. DOL and in the H-2A regulations governing Plaintiff's contract at 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135.

106.    During the course of Plaintiff Rodriguez-Vazquez's employment, the 2013-2014 Defendants:

      i.    Failed to pay Plaintiff wages equal to the higher of the AEWR, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate, in compensation for all of Plaintiff's hours worked;

      ii.    Failed to provide Plaintiff housing that met DOL OSHA standards;

      iii.    Failed to reimburse, at the 50% point of the contract's term, Plaintiff's

transportation and subsistence costs from his home in Mexico to the place of
employment;

iv.   Failed to pay Plaintiff's transportation and subsistence costs from the place of
employment to his home in Mexico at the end of the contract period, or at the
time of termination without cause;

v.   Failed to pay Plaintiff when wages were due;

vi.   Upon information and belief, failed to maintain accurate and adequate records
with respect to Plaintiff's earnings, including field tally records, supporting
summary payroll records, records showing the nature and amount of the work
performed, the number of hours of work offered each day by the employer, the
hours actually worked each day by Plaintiff, the time Plaintiff began and ended
each workday, the rate of pay, Plaintiff's earnings per pay period, Plaintiff's home
address, and the amount of and reasons for any and all deductions taken from
Plaintiff's wages;

vii.   Failed to provide pay stubs to Plaintiff with Plaintiff's total earnings for the pay
period, Plaintiff's hourly rate and piece rate of pay, the hours of employment
offered to Plaintiff, the hours actually worked by Plaintiff, an itemization of all
deductions made from Plaintiff's wages, the units produced daily if piece rates
were used, the beginning and ending dates of the pay period, and the employer's
name, address and FEIN; and

viii.   Violated applicable federal, state, and local laws and regulations, including by
holding or confiscating Plaintiff's passport, visa, or other immigration documents.

**F.  2013-2014 Season Document Withholding**

Page 21 of 51

### ii.      Workers at the Planck Defendants' Farms

107.      The 2013 Planck Defendants required Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes to turn over their passports and visas to them or their agents during the 2013-2014 season.

108.      Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes felt obligated to comply with 2013 Planck Defendants' demands.

109.      The 2013 Planck Defendants knowingly removed, confiscated, concealed, or possessed the actual passports or other immigration documents of Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes.

110.      The Planck Defendants' agent informed Plaintiff Altobeli Perez-De Leon that the workers had to turn over their passports to the Planck Defendants so that the workers would not leave.

111.      When Plaintiff Gutierrez-Morales wished to return to Mexico, he asked the 2013 Planck Defendants for his passport and immigration documents back so that he could leave. Planck became angry with Plaintiff Gutierrez-Morales and threatened him that if he left he would be banned from the United States for five years.

112.      Plaintiff Gutierrez-Morales insisted upon having his documents returned to him despite the 2013 Planck Defendants' threats.

113.      The 2013 Planck Defendants did not return the passports or immigration documents to Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes until the 2013 Planck Defendants determined the season had ended.

114.      The 2013 Planck Defendants acted as alleged in paragraphs 107 through 113 in order to, without lawful authority, maintain, prevent, or restrict the labor of Plaintiffs.

ii.    **Worker at Defendant Price's Farm**

115.    Defendant Price required Plaintiff Rodriguez-Vazquez to turn over his passport and visa to Defendant Price or his agents during the 2013-2014 season.

116.    Plaintiff Rodriguez-Vazquez felt obligated to comply with Defendant Price's demands.

117.    Defendant Price knowingly removed, confiscated, concealed, or possessed the actual passport or other immigration documents of Plaintiff Rodriguez-Vazquez.

118.    Plaintiff Rodriguez-Vazquez understood that the workers had to turn over their passports to Defendant Price so that the workers would not leave.

119.    Defendant Price did not return the passport or immigration documents to Plaintiff Rodriguez-Vazquez until Defendant Price determined the season had ended.

120.    Defendant Price acted as alleged in paragraphs 115 through 119 in order to, without lawful authority, maintain, prevent, or restrict the labor of Plaintiff Rodriguez-Vazquez.

**G. 2014-2015 Season Recruitment of Mexican H-2A Workers**

121.    Alleging a lack of available, documented agricultural workers in the area of their operations, Defendant Planck, Defendant Planck d/b/a B.S. Land & Cattle Co., LLC, and Defendant B.S. Land & Cattle Co., LLC (hereinafter jointly "the 2014 Planck Defendants"), Defendant Watkins, Defendant Watkins d/b/a High Point Farms, and Defendant High Point Farms, LLC (hereinafter jointly "the Watkins Defendants"), and Defendant Price (hereinafter collectively "the 2014-2015 Defendants") jointly filed an application to employ temporary foreign workers through the H-2A program during the 2014-2015 tobacco season.

122.    The initial temporary labor certification application for the 2014-2015 tobacco season of the 2014-2015 Defendants sought admission of 42 workers for employment from May

22, 2013 through February 15, 2014 and was anticipated to provide workers with an average of 40 hours of employment per week.

123.     As part of its temporary labor certification application as described in paragraphs 21 through 23 and 121 through 122, the 2014-2015 Defendants submitted to the U.S. DOL a clearance order containing a certification that the clearance order contained all material terms and conditions of the job and described the actual terms and conditions of employment being offered, as required by 20 C.F.R. § 653.501(d)(3).

124.     The 2014-2015 Defendants' clearance order for the 2014-2015 season, as described in paragraph 123, explicitly and implicitly incorporated the U.S. DOL regulations at 20 C.F.R. § 655 Subpart B.

125.     The U.S. DOL accepted the 2014-2015 Defendants' application for foreign labor certification, with the clearance order described in paragraphs 123 through 124, filed with respect to the 2014-2015 tobacco season, after revising the number of workers requested to 41.

126.     The 2014-2015 Defendants recruited H-2A workers from Mexico, including all Plaintiffs except Plaintiff Gutierrez-Morales, to fill some of the positions offered in the clearance order for the 2014-2015 tobacco season.

127.     Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Rodriguez-Vazquez had worked for the 2013-2014 Defendants, and were recruited to come back to work for the 2014-2015 Defendants for the 2014-2015 season. Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Rodriguez-Vazquez had to pay a recruitment fee for the 2014-2015 season.

128.     Plaintiffs Perez-Morales, Moron-Blas, Rios-Perez, and Sanchez-Solis all learned about the job opportunity working for the 2014-2015 Defendants in Kentucky, through word of

mouth through acquaintances in Mexico.

**H. 2014-2015 Season Plaintiffs' In-Bound Travel**

129.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Moron-Blas, Perez-Morales, Rios-Perez, and Sanchez-Solis traveled to Monterrey, Mexico, at their own expense, for their visa processing appointments.

130.    Some Plaintiffs had to obtain a passport specifically for the purpose of obtaining their H-2A visas at the consular processing appointment.

131.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Moron-Blas, Perez-Morales, Rios-Perez, and Sanchez-Solis incurred expenses for the visa processing fee, hotel stay in Monterrey, food, and bus tickets to travel from their homes to the United States.

132.    Some Plaintiffs took out loans in Mexico to cover their expenses for traveling to the United States to work for Defendants for the 2014-2015 season.

133.    While still in Monterrey, Mexico, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Moron-Blas, Perez-Morales, Rios-Perez, and Sanchez-Solis were informed about the terms and conditions of the Kentucky tobacco job, as stated in the job clearance order, which included but were not limited to, pay at a rate of at least $10.10 per hour, free utilities and housing in compliance with federal standards, and reimbursements for travel expenses.

134.    But for Plaintiffs' employment with the 2014-2015 Defendants, Plaintiffs would not have incurred the expenses described in paragraphs 129 through 132.

135.    The expenses incurred by Plaintiffs described in paragraphs 129 through 132 were necessary to Plaintiffs' employment with the 2014-2015 Defendants.

136.    The expenses incurred by Plaintiffs described in paragraphs 129 through 132 primarily benefitted the 2014-2015 Defendants.

137.    The 2014-2015 Defendants did not reimburse Plaintiffs for the expenses described in paragraphs 129 through 132.

138.    The expenses described in paragraphs 129 through 132 functioned as de facto deductions from Plaintiffs' wages during their first work week with the 2013-2014 Defendants.

139.    The deductions described in paragraphs 129 through 132 caused Plaintiffs to earn less than the AEWR and the federally mandated minimum wage during their first workweek with the 2014-2015 Defendants.

140.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Moron-Blas, Perez-Morales, Rios-Perez, and Sanchez-Solis entered the United States pursuant to their H-2A visas on or about May 16, 2014.

141.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Moron-Blas, Perez-Morales, Rios-Perez, and Sanchez-Solis arrived to the 2014-2015 Defendants' farms in Kentucky on or about May 17, 2014, and commenced working on or about May 19, 2014.

**I.  2014-2015 Season Housing Conditions**

    **i.  The Planck Defendants' Housing Locations**

142.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were housed on the property owned or operated by the 2014 Planck Defendants during the 2014-2015 season.

143.    During the course of the 2014-2015 season, the 2014-2015 Defendants provided housing to Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and

Perez-Morales that did not comply with applicable housing regulations.

144.    Amongst other housing violations, Plaintiffs were not provided with actual beds, but were only given wooden slabs with a thin mat on top or wooden box springs in lieu of actual beds. Some of the workers resorted to sleeping on the floor or buying actual mattresses at their own expense.

145.    The 2014-2015 Defendants provided housing to Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales that was infested with rodents and insects, including fleas or bug beds.

146.    The 2014-2015 Defendants provided housing to Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales that did not have screens on the windows.

147.    The 2014-2015 Defendants failed to provide Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales with adequate storage for their personal belongings.

148.    The 2014-2015 Defendants provided housing to Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales that lacked basic necessities that Plaintiffs had to purchase and provide on their own, including cleaning and pest control supplies, plates and utensils, and light fixtures. The workers had to provide their own maintenance for anything that needed to be repaired in the housing.

149.    Throughout the 2014-2015 season, the 2014-2015 Defendants illegally charged Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales for electricity at their housing facility on a monthly basis.

    **ii.    Defendant Price's Housing Location**

Page 27 of 51

150.    Plaintiff Rodriguez-Vazquez was housed on property owned or operated by Defendant Price during the 2014-2015 season.

151.    During the course of the 2014-2015 season, the 2014-2015 Defendants provided housing to Plaintiff Rodriguez-Vazquez that did not comply with applicable housing regulations.

152.    Amongst other housing violations, Plaintiff Rodriguez-Vazquez was not provided with an actual bed, but only a wooden box spring with an inflatable mattress on top.

153.    The 2014-2015 Defendants provided housing to Plaintiff Rodriguez-Vazquez that was infested with rodents and insects, including fleas or bed bugs.

154.    The 2014-2015 Defendants provided housing to Plaintiff Rodriguez-Vazquez that did not have screens on the windows.

155.    The 2014-2015 Defendants failed to provide Plaintiff Rodriguez-Vazquez with adequate storage for his personal belongings.

156.    The 2014-2015 Defendants provided housing to Plaintiff Rodriguez-Vazquez that lacked a functioning shower, forcing Plaintiff to bathe out of buckets.

157.    The 2014-2015 Defendants provided housing to Plaintiff Rodriguez-Vazquez that lacked adequate heat, causing Plaintiff Rodriguez -Vazquez to suffer during the winter months.

158.    The 2014-2015 Defendants provided housing to Plaintiff Rodriguez-Vazquez that leaked when it rained hard.

### iii.    The Watkins Defendants' Housing Location

159.    Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were housed on the property owned or operated by the Watkins Defendants during the 2014-2015 season.

160.    During the course of the 2014-2015 season, the 2014-2015 Defendants provided housing to Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis that did not comply with

applicable housing regulations.

161.   Amongst other housing violations, Plaintiffs were not provided with actual beds, but were only given fold-out cots.

162.   The 2014-2015 Defendants provided housing to Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis that was infested with insects, including fleas or bed bugs.

163.   The 2014-2015 Defendants provided housing to Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis that did not have screens on the windows.

164.   The 2014-2015 Defendants failed to provide Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis with adequate storage for their personal belongings.

165.   The 2014-2015 Defendants provided housing to Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis' housing that had inadequate and unsanitary trash services, comprised of an uncovered dump site at the housing location that was not regularly cleaned.

166.   The 2014-2015 Defendants provided housing to Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis' housing that had inadequate and unsanitary plumbing services, which leaked sewage or dirty water directly into an opening below their house.

**J.  2014-2015 Season Employment**

  **i.   Workers at the Planck Defendants' Farm**

167.   Throughout the 2014-2015 tobacco season, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes and Perez-Morales were jointly employed by the 2014-2015 Defendants.

168.   While working for the 2014-2015 Defendants, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes and Perez-Morales were engaged in the production of goods for commerce as that phrase is used in the FLSA.

169.     While working for the 2014-2015 Defendants in 2014 and 2015, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes and Perez-Morales were employed by these Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

170.     The 2014-2015 Defendants were the employers of Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes and Perez-Morales during the 2014-2015 tobacco season, within the meaning of the FLSA, 29 U.S.C. § 203(d).

171.     While working for the 2014-2015 Defendants in 2014 and 2015, Plaintiffs Gutierrez-Morales, Altobeli Perez-De Leon, Ramiro Perez-De Leon, and Velazquez-Cifuentes were each an "employee" of  these Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

172.     By choosing to voluntarily participate in the H-2A program in 2014-2015 as joint employers, the 2014-2015 Defendants were jointly and severally liable for meeting all federal regulations that pertain to the H-2A program and for complying with Plaintiffs' clearance orders/H-2A contracts of employment.

173.     The 2014-2015 Defendants were the employers of Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales during the 2014-2015 tobacco season within the meaning of 20 C.F.R. § 655.103(b).

174.     While working for the 2014-2015 Defendants in 2014 and 2015, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were each an "employee" and "H-2A worker" of these Defendants within the meaning of 20 C.F.R. § 655.103(b).

175.     The terms of the work contracts under which the 2014-2015 Defendants employed Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and

Perez-Morales were determined and controlled, in part, by federal law.

176.   The terms of work that the 2014-2015 Defendants offered to Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales in the 2014-2015 seasons included, among other things:

    i.   the terms offered in the clearance order described in paragraphs 123 through 124;

    ii.   the contents required by law to be contained in all H-2A job offers as set forth in the regulations at 20 C.F.R. § 655.122; and

    iii.   the legally required assurances and obligations of H-2A employers as set forth in the regulations at 20 C.F.R. § 655.135.

177.   Specifically, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales' work contracts with the 2014-2015 Defendants offered, among other things, the following terms:

    i.   Wages equal to the higher of the AEWR, which was $10.10 to $10.28 per hour in Kentucky during the 2014-2015 tobacco season, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate;

    ii.   Housing, at no cost to the workers, that met DOL OSHA migrant housing standards, 29 C.F.R. § 1910.142;

    iii.   Provision of all tools, supplies, and equipment required to perform their job duties, without charge or deposit;

    iv.   Reimbursement, at the 50% point of the contract's term,  of Plaintiffs' transportation and subsistence costs from their homes in Mexico to the place of employment;

    v.   Payment of the Plaintiffs' transportation and subsistence costs from the place of

employment to their homes in Mexico at the end of the contract period, or at the time of termination without cause;

vi.     Transportation, at no cost to the workers, that met all applicable federal, state or local laws and regulations, between the housing and the worksite;

vii.    Payment when wages were due;

viii.   Maintenance of accurate and adequate records with respect to workers' earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by the worker, the time the worker began and ended each workday, the rate of pay, the worker's earnings per pay period, the worker's home address, and the amount of and reasons for any and all deductions taken from the worker's wages;

ix.     Pay stubs with the worker's total earnings for the pay period, the worker's hourly rate and piece rate of pay, the hours of employment offered to the worker, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, the units produced daily if piece rates are used, the beginning and ending dates of the pay period, and the employer's name, address and FEIN; and

x.      Employer compliance with all applicable federal, state, and local laws and regulations, including specifically the requirement that the employer not hold or confiscate the workers' passports, visas, or other immigration documents.

178.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were paid by check, without being given any other pay or hours records by

the 2014-2015 Defendants.

179.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were informed by the 2014-2015 Defendants, or their agents, that they were only going to be paid $6.00 per hour for their work for the majority of the 2014-2015 season.

180.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were not paid by the 2014-2015 Defendants for all of their compensable work time.

181.    For the hours for which Defendants did compensate Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales, they were only paid at an hourly rate of $6.00 per hour, prior to any deductions, for the majority of the 2014-2015 season.

182.    For some workweeks, in the 2014-2015 season, Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were paid via a combination of a piece rate and an hourly rate.

183.    The 2014-2015 Defendants did not pay Plaintiffs at least the minimum wage for each workweek during which Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were employed as required by the FLSA, 29 U.S.C. § 206(b).

184.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales were not reimbursed for any of their in-bound travel expenses, effectively bringing their first workweek's wages even further below the AEWR and the federal minimum wage required by the FLSA, 29 U.S.C. § 206(b).

185.    Upon information and belief, Defendants failed to maintain pay records for the

2014-2015 season, as required by the FLSA, 29 U.S.C. § 211(c).

186.    During the course of Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales' employment in 2014-2015, the 2014-2015 Defendants failed to comply with material terms and conditions of employment offered to Plaintiffs in the clearance order submitted to the U.S. DOL and the H-2A regulations governing Plaintiffs' contracts at 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135.

187.    During the course of Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales' employment, the 2014-2015 Defendants:

 i. Failed to pay Plaintiffs wages equal to the higher of the AEWR, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate, in compensation for all of Plaintiffs' hours worked;

 ii. Failed to provide Plaintiffs housing that met DOL OSHA standards;

 iii. Failed to provide Plaintiffs with tools, supplies, and equipment required to perform their job duties, without charge or deposit;

 iv. Failed to reimburse, at the 50% point of the contract's term, Plaintiffs' transportation and subsistence costs from their homes in Mexico to the place of employment;

 v. Failed to pay Plaintiffs' transportation and subsistence costs from the place of employment to their homes in Mexico at the end of the contract period, or at the time of termination without cause;

 vi. Failed to provide transportation, at no cost to the workers, that met all applicable federal, state or local laws and regulations, between the housing and the worksite, by making Plaintiffs ride in cattle cars;

vii.    Failed to pay Plaintiffs when wages were due;

viii.    Upon information and belief, failed to maintain accurate and adequate records with respect to each Plaintiff's earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by each Plaintiff, the time each Plaintiff began and ended each workday, the rate of pay, each Plaintiff's earnings per pay period, each Plaintiff's home address, and the amount of and reasons for any and all deductions taken from each Plaintiff's wages;

ix.    Failed to provide pay stubs to each Plaintiff with the Plaintiff's total earnings for the pay period, the Plaintiff's hourly rate and piece rate of pay, the hours of employment offered to the Plaintiff, the hours actually worked by the Plaintiff, an itemization of all deductions made from the Plaintiff's wages, the units produced daily if piece rates were used, the beginning and ending dates of the pay period, and the employer's name, address and FEIN; and

x.    Violated applicable federal, state, and local laws and regulations, including by holding or confiscating Plaintiffs' passports, visas, or other immigration documents.

**ii.    Worker at Defendant Price's Farm**

188.    Throughout the 2014-2015 tobacco season, Plaintiff Rodriguez-Vazquez was jointly employed by the 2014-2015 Defendants.

189.    While working for the 2014-2015 Defendants, Plaintiff Rodriguez-Vazquez was engaged in the production of goods for commerce as that phrase is used in the FLSA.

190.    While working for the 2014-2015 Defendants in 2014-2015, Plaintiff Rodriguez-Vazquez was employed by these Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

191.    The 2014-2015 Defendants were the employers of Plaintiff Rodriguez-Vazquez during the 2014-2015 tobacco season, within the meaning of the FLSA, 29 U.S.C. § 203(d).

192.    While working for the 2014-2015 Defendants in 2014-2015, Plaintiff Rodriguez-Vazquez was each an "employee" of the 2014-2015 Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

193.    By choosing to voluntarily participate in the H-2A program in 2014-2015 as joint employers, the 2014-2015 Defendants were jointly and severally liable for meeting all federal regulations that pertain to the H-2A program and for complying with Plaintiff's clearance orders/H-2A contract of employment.

194.    The 2014-2015 Defendants were the employers of Plaintiff Rodriguez-Vazquez during the 2014-2015 tobacco season, within the meaning of 20 C.F.R. § 655.103(b).

195.    While working for the 2014-2015 Defendants in 2014-2015, Plaintiff Rodriguez-Vazquez was an "employee" and "H-2A worker" of the 2014-2015 Defendants within the meaning of 20 C.F.R. § 655.103(b).

196.    The terms of the work contract under which the 2014-2015 Defendants employed Plaintiff Rodriguez-Vazquez were determined and controlled, in part, by federal law.

197.    The terms of work the 2014-2015 Defendants offered to Plaintiff Rodriguez-Vazquez in the 2014-2015 seasons included, among other things:

   i.    the terms offered in the clearance order described in paragraphs 123 through 124;

   ii.   the contents required by law to be contained in all H-2A job offers as set forth in

the regulations at 20 C.F.R. § 655.122; and

iii.     the legally required assurances and obligations of H-2A employers as set forth in

the regulations at 20 C.F.R. § 655.135.

198.     Specifically, Plaintiff Rodriguez-Vazquez's work contract with the 2014-2015

Defendants offered, among other things, the following terms:

i.     Wages equal to the higher of the AEWR, which was $10.10 to $10.28 per hour in

Kentucky during the 2014-2015 tobacco season, the prevailing hourly wage rate,

the prevailing piece rate, or the FLSA minimum wage rate;

ii.     Housing, at no cost to the workers, that met DOL OSHA migrant housing

standards, 29 C.F.R. § 1910.142;

iii.     Reimbursement, at the 50% point of the contract's term, of Plaintiff's

transportation and subsistence costs from his home in Mexico to the place of

employment;

iv.     Payment of the Plaintiff's transportation and subsistence costs from the place of

employment to his home in Mexico at the end of the contract period, or at the

time of termination without cause;

v.     Payment when wages were due;

vi.     Maintenance of accurate and adequate records with respect to workers' earnings,

including field tally records, supporting summary payroll records, records

showing the nature and amount of the work performed, the number of hours of

work offered each day by the employer, the hours actually worked each day by

the worker, the time the worker began and ended each workday, the rate of pay,

the worker's earnings per pay period, the worker's home address, and the amount

of and reasons for any and all deductions taken from the worker's wages;

vii.    Pay stubs with the worker's total earnings for the pay period, the worker's hourly rate and piece rate of pay, the hours of employment offered to the worker, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, the units produced daily if piece rates are used, the beginning and ending dates of the pay period, and the employer's name, address and federal employer identification number ("FEIN"); and

viii.    Employer compliance with all applicable federal, state, and local laws and regulations, including specifically the requirement that the employer not hold or confiscate the workers' passports, visas, or other immigration documents.

199.    Plaintiff Rodriguez-Vazquez was paid by check, without being given any other pay or hours records by the 2014-2015 Defendants.

200.    Plaintiff Rodriguez-Vazquez was informed by the 2014-2015 Defendants, or their agents, that he was only going to be paid $6.00 per hour for his work for the majority of the 2014-2015 season.

201.    Plaintiff Rodriguez-Vazquez not paid by the 2014-2015 Defendants for all of his compensable work time.

202.    For the hours for which the 2014-2015 Defendants did compensate Plaintiff Rodriguez-Vazquez, he was only paid at an hourly rate of $6.00 per hour, prior to any deductions, for the majority of the 2014-2015 season.

203.    For some workweeks in the 2013-2014 season, Plaintiff Rodriguez-Vazquez was paid by the 2013-2014 Defendants via a combination of a piece rate and an hourly rate.

204.    The 2014-2015 Defendants did not pay Plaintiff at least the minimum wage for

each workweek during which Plaintiff Rodriguez-Vazquez was employed as required by the FLSA, 29 U.S.C. § 206(b).

205.    Plaintiff Rodriguez-Vazquez was not reimbursed for any of his in-bound travel expenses, effectively bringing his first workweek's wages even further below the AEWR and the federal minimum wage required by the FLSA, 29 U.S.C. § 206(b).

206.    Upon information and belief, the 2014-2015 Defendants failed to maintain pay records for the 2014-2015 season, as required by the FLSA, 29 U.S.C. § 211(c).

207.    During the course of Plaintiff Rodriguez-Vazquez's employment in 2014-2015, the 2014-2015 Defendants failed to comply with material terms and conditions of employment offered to Plaintiff in the clearance order submitted to the U.S. DOL and in the H-2A regulations governing Plaintiff's contract at 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135.

208.    During the course of Plaintiff Rodriguez-Vazquez's employment, the 2014-2015 Defendants:

    i.    Failed to pay Plaintiff wages equal to the higher of the AEWR, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate, in compensation for all of Plaintiff's hours worked;

    ii.    Failed to provide Plaintiff housing that met DOL OSHA standards;

    iii.    Failed to reimburse, at the 50% point of the contract's term, Plaintiff's transportation and subsistence costs from his home in Mexico to the place of employment;

    iv.    Failed to pay Plaintiff's transportation and subsistence costs from the place of employment to his home in Mexico at the end of the contract period, or at the time of termination without cause;

    v.      Failed to pay Plaintiff when wages were due;

    vi.    Upon information and belief, failed to maintain accurate and adequate records with respect to Plaintiff's earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by Plaintiff, the time Plaintiff began and ended each workday, the rate of pay, Plaintiff's earnings per pay period, Plaintiff's home address, and the amount of and reasons for any and all deductions taken from Plaintiff's wages;

    vii.    Failed to provide pay stubs to Plaintiff with Plaintiff's total earnings for the pay period, Plaintiff's hourly rate and piece rate of pay, the hours of employment offered to Plaintiff, the hours actually worked by Plaintiff, an itemization of all deductions made from Plaintiff's wages, the units produced daily if piece rates were used, the beginning and ending dates of the pay period, and the employer's name, address and FEIN; and

    viii.    Violated applicable federal, state, and local laws and regulations, including by holding or confiscating Plaintiff's passport, visa, or other immigration documents.

### iii.    Workers at the Watkins Defendants' Farm

209.    Throughout the 2014-2015 tobacco season, Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were jointly employed by the 2014-2015 Defendants.

210.    While working for the 2014-2015 Defendants, Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were engaged in the production of goods for commerce as that phrase is used in the FLSA.

211.   While working for the 2014-2015 Defendants in 2014-2015, Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were employed by the 2014-2015 Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

212.   The 2014-2015 Defendants were the employers of Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis during the 2014-2015 tobacco season within the meaning of the FLSA, 29 U.S.C. § 203(d).

213.   While working for the 2014-2015 Defendants in 2014-2015, Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were each an "employee" of the 2014-2015 Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

214.   By choosing to voluntarily participate in the H-2A program in 2014-2015 as joint employers, the 2014-2015 Defendants were jointly and severally liable for meeting all federal regulations that pertain to the H-2A program and for complying with Plaintiffs' clearance orders/H-2A contracts of employment.

215.   The 2014-2015 Defendants were the employers of Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis during the 2014-2015 tobacco season within the meaning of 20 C.F.R. § 655.103(b).

216.   While working for the 2014-2015 Defendants in 2014-2015, Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were each an "employee" and "H-2A worker" of these Defendants within the meaning of 20 C.F.R. § 655.103(b).

217.   The terms of the work contracts under which the 2014-2015 Defendants employed Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were determined and controlled, in part, by federal law.

218.   The terms of work that the 2014-2015 Defendants offered to Plaintiffs Moron-

Blas, Rios-Perez, and Sanchez-Solis in the 2014-2015 seasons included, among other things:

    i.    the terms offered in the clearance order described in paragraphs 123 through 124;

    ii.    the contents required by law to be contained in all H-2A job offers as set forth in the regulations at 20 C.F.R. § 655.122; and

    iii.    the legally required assurances and obligations of H-2A employers as set forth in the regulations at 20 C.F.R. § 655.135.

219.    Specifically, Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis' work contracts with the 2014-2015 Defendants offered, among other things, the following terms:

    i.    Wages equal to the higher of the AEWR, which was $10.10 to $10.28 per hour in Kentucky during the 2014-2015 tobacco season, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate;

    ii.    Housing, at no cost to the workers, that met DOL OSHA migrant housing standards, 29 C.F.R. § 1910.142;

    iii.    Reimbursement, at the 50% point of the contract's term, of Plaintiffs' transportation and subsistence costs from their homes in Mexico to their place of employment in Kentucky;

    iv.    Payment of the Plaintiffs' transportation and subsistence costs from the place of employment to their homes in Mexico at the end of the contract period, or at the time of termination without cause;

    v.    Transportation, at no cost to the workers, that met all applicable federal, state, or local laws and regulations, between the housing and the worksite;

    vi.    Payment when wages were due;

    vii.    Maintenance of accurate and adequate records with respect to workers' earnings,

including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by the worker, the time the worker began and ended each workday, the rate of pay, the worker's earnings per pay period, the worker's home address, and the amount of and reasons for any and all deductions taken from the worker's wages;

viii.   Pay stubs with the worker's total earnings for the pay period, the worker's hourly rate and piece rate of pay, the hours of employment offered to the worker, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, the units produced daily if piece rates are used, the beginning and ending dates of the pay period, and the employer's name, address and FEIN; and

ix.   Employer compliance with all applicable federal, state, and local laws and regulations, including specifically the requirement that the employer not hold or confiscate the workers' passports, visas, or other immigration documents.

220.   Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were paid by check, without being given any other pay or hours records by the 2014-2015 Defendants.

221.   Only after they arrived in the United States were Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis informed by the 2014-2015 Defendants, or their agents, that they were only going to be paid $6.00 per hour for their work for the 2014-2015 season.

222.   Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were not paid by the 2014-2015 Defendants for all of their compensable work time.

223.   For the hours for which the 2014-2015 Defendants did compensate Plaintiffs

Moron-Blas, Rios-Perez, and Sanchez-Solis, they were only paid at an hourly rate of $6.00 per hour, prior to any deductions, for their work during the 2014-2015 season.

224.    The 2014-2015 Defendants did not pay Plaintiffs at least the minimum wage for each workweek during which Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were employed as required by the FLSA, 29 U.S.C. § 206(b).

225.    Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis were not reimbursed for their in-bound travel expenses, effectively bringing their first workweek's wages even further below the AEWR and the federal minimum wage required by the FLSA, 29 U.S.C. § 206(b).

226.    Upon information and belief, the 2014-2015 Defendants failed to maintain pay records for the 2014-2015 season, as required by the FLSA, 29 U.S.C. § 211(c).

227.    During the course of Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis' employment in 2014-2015, the 2014-2015 Defendants failed to comply with material terms and conditions of employment offered to Plaintiffs in the clearance order submitted to the U.S. DOL and the H-2A regulations governing Plaintiffs' contracts at 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135.

228.    During the course of Plaintiffs Moron-Blas, Rios-Perez, and Sanchez-Solis' employment in the 2014-2015 tobacco season, the 2014-2015 Defendants:

     i.    Failed to pay Plaintiffs wages equal to the higher of the AEWR, the prevailing hourly wage rate, the prevailing piece rate, or the FLSA minimum wage rate, in compensation for all of Plaintiffs' hours worked;

    ii.    Failed to provide Plaintiffs housing that met DOL OSHA standards;

   iii.    Failed to reimburse Plaintiffs' transportation and subsistence costs from their homes in Mexico to the place of employment in Kentucky at the 50% point of the

contract;

iv.    Failed to pay Plaintiffs' transportation and subsistence costs from the place of employment to their homes in Mexico at the end of the contract period, or at the time of termination without cause;

v.    Failed to provide transportation, at no cost to the workers, that met all applicable federal, state or local laws and regulations, between the housing and the worksite, by making Plaintiffs pay for gasoline and requiring workers to drive without the proper licenses;

vi.    Upon information and belief, failed to maintain accurate and adequate records with respect to each Plaintiff's earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by each Plaintiff, the time each Plaintiff began and ended each workday, the rate of pay, each Plaintiff's earnings per pay period, each Plaintiff's home address, and the amount of and reasons for any and all deductions taken from each Plaintiff's wages;

vii.    Failed to provide pay stubs to each Plaintiff with the Plaintiff's total earnings for the pay period, the Plaintiff's hourly rate and piece rate of pay, the hours of employment offered to the Plaintiff, the hours actually worked by the Plaintiff, an itemization of all deductions made from the Plaintiff's wages, the units produced daily if piece rates were used, the beginning and ending dates of the pay period, and the employer's name, address and FEIN; and

viii.    Violated applicable federal, state, and local laws and regulations, including by

holding or confiscating their passports, visas, or other immigration documents.

K. **2014-2015 Season Document Withholding**

     i.   **Workers at the Planck Defendants' Farms**

229.    The 2014 Planck Defendants required Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales to turn over their passports and visas to them or their agents during the course of the 2014-2015 season.

230.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales felt obligated to comply with 2014 Planck Defendants' demands.

231.    The 2014 Planck Defendants knowingly removed, confiscated, possessed, destroyed, or concealed the actual passports or other immigration documents of Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales.

232.    Plaintiffs Altobeli Perez-De Leon, Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales asked the 2014 Planck Defendants, or their agents, for the return of their passports and immigration documents during the course of the 2014-2015 season, but the 2014 Planck Defendants refused.

233.    The 2014 Planck Defendants did not return the passport or immigration documents to Plaintiff Altobeli Perez-De Leon until the 2014 Planck Defendants determined the 2014-2015 tobacco season had ended.

234.    The 2014 Planck Defendants never returned the passports or other immigration documents of Plaintiffs Ramiro Perez-De Leon, Velazquez-Cifuentes, and Perez-Morales, despite Plaintiffs' repeated requests for them to do so.

235.    The 2014 Planck Defendants acted as alleged in paragraphs 229 through 234 in order to, without lawful authority, maintain, prevent, or restrict the labor of Plaintiffs.

### ii.     Workers at the Watkins Defendants' Farms

236.    The Watkins Defendants required Plaintiffs Rios-Perez and Sanchez-Solis to turn over their passports and visas to them or their agents during the course of the 2014-2015 season.

237.    Plaintiffs Rios-Perez and Sanchez-Solis felt obligated to comply with Watkins Defendants' demands.

238.    The Watkins Defendants knowingly removed, confiscated, possessed, destroyed, or concealed the actual passports or other immigration documents of Plaintiffs Rios-Perez and Sanchez-Solis.

239.    The Watkins Defendants, or their agents, informed Plaintiff Rios-Perez's brother that Watkins had to keep the workers' passports and immigration documents so that they would not leave.

240.    The Watkins Defendants never returned the passports or other immigration documents of Plaintiff Sanchez-Solis, despite Plaintiff's repeated requests for them to do so.

241.    The Watkins Defendants acted as alleged in paragraphs 236 through 240 in order to, without lawful authority, maintain, prevent, or restrict the labor of Plaintiffs.

### L. General Allegations Pertaining to Both Seasons

242.    On May 6, 2015, all Plaintiffs except Plaintiff Rodriguez-Vazquez sent a formal written request for their pay and hour records to all Defendants, as applicable based on their seasons of employment.

243.    Pursuant to 20 C.F.R. § 655.122(j)(2), Defendants had 72 hours to provide Plaintiffs with the requested records.

244.    Defendants received the formal written requests on May 7, 2015.

245.    As of the date of this filing, Defendants have not provided Plaintiffs with any of

the requested pay records, amounting to an additional violation of Plaintiffs' contracts with

Defendants.

246.    All conditions precedent to this action have been satisfied.

247.    All actions and omissions alleged herein were undertaken by Defendants either

directly or through their agents.

## FIRST CAUSE OF ACTION
### (FLSA Minimum Wage Violation)

248.    Plaintiffs reallege and incorporate by reference the allegations set forth in

paragraphs 1 through 247 of this Complaint.

249.    By failing to pay Plaintiffs the minimum wage in each workweek, Defendants

violated Plaintiffs' rights under the FLSA, 29 U.S.C. § 206(a), for which Plaintiffs are entitled to

relief pursuant to 29 U.S.C. § 216(b).

250.    For these violations, the Plaintiffs have suffered injury and are entitled to their

unpaid minimum wages, an equal amount in liquidated damages, costs of court, and attorney's

fees pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (Breach of Contract)

251.    Plaintiffs reallege and incorporate by reference the allegations set forth in

paragraphs 1 through 250 of this Complaint.

252.    The U.S. DOL clearance orders described in this Complaint constituted

employment contracts between Defendants and each Plaintiff as further alleged herein.

253.    Plaintiffs performed all material contractual obligations of employment that they

were called upon to perform under their employment contracts with Defendants.

254.    Defendants failed to perform their obligations under their employment contracts

with each Plaintiff and materially breached their contractual obligations owed to each Plaintiff during the course of the 2013-2014 and 2014-2015 seasons.

255.    Defendants' breaches of Plaintiffs' employment contracts caused Plaintiffs substantial injuries, including, but not limited to, lost wages.

**THIRD CAUSE OF ACTION**
**[TVPRA Unlawful Conduct With Respect To Immigration Documents under 18 U.S.C. § 1597(a)(3)]**

256.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 255 of this Complaint.

257.    The Defendants knowingly removed, confiscated, possessed, destroyed, or concealed the actual passports or other immigration documents of Plaintiffs Gutierrez-Morales, Perez-Morales, Ramiro Perez-De Leon, Altobeli Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Rios-Perez, and Sanchez-Solis.

258.    The Defendants removed, confiscated, possessed, destroyed, or concealed the actual passports or other immigration documents of Plaintiffs Gutierrez-Morales, Perez-Morales, Ramiro Perez-De Leon, Altobeli Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Rios-Perez, and Sanchez-Solis in order to, without lawful authority, maintain, prevent, or restrict the labor of [sic] services of Plaintiffs.

259.    The unlawful conduct of these Defendants with respect to Plaintiffs Gutierrez-Morales, Perez-Morales, Ramiro Perez-De Leon, Altobeli Perez-De Leon, Velazquez-Cifuentes, Rodriguez-Vazquez, Rios-Perez, and Sanchez-Solis' immigration documents caused Plaintiffs to suffer injury, and they are therefore entitled to recover damages and attorney's fees pursuant to 18 U.S.C. § 1595(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter an order:

(a) Declaring that Defendants violated Plaintiffs' rights under the minimum wage provisions of the FLSA at 29 U.S.C. § 206(a);

(b) Granting judgment in favor of Plaintiffs on their FLSA minimum wage claim and awarding them damages, including their unpaid minimum wages, an equal amount in liquidated damages, costs of court, and attorneys' fees;

(d) Granting judgment in favor of Plaintiffs on their contract claims and awarding them damages for Defendants' contractual breaches;

(e) Granting judgment in favor of Plaintiffs on their TVPRA claim and awarding them damages, including punitive damages, and attorney's fees;

(f) Awarding Plaintiffs pre and post-judgment interest, as allowed by law;

(g) Awarding Plaintiffs their costs; and

(h) Granting such other relief as this Court deems just and appropriate.

Respectfully submitted,

**/s/ Douglas L. Stevick**
Douglas L. Stevick
Mo. Bar No. 65864
*Application for Pro Hac Vice Admission Forthcoming*
dstevick@trla.org
TEXAS RIOGRANDE LEGAL AID, INC.
5439 Lindenwood Ave.
St. Louis, MO 63109
Telephone: (314) 449-5161

Angela M. Graves
Tenn. Bar No. 031139
*Application for Pro Hac Vice Admission Forthcoming*
agraves@trla.org

Caitlin I. Berberich
Tenn. Bar No. 025780
*Application for Pro Hac Vice Admission Forthcoming*

cberberich@trla.org
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 750-1200
Facsimile: (615) 366-3349

McKenzie Cantrell
Ky. Bar No. 94897
mckenzie@kyequaljustice.org
KENTUCKY EQUAL JUSTICE CENTER
455 S. Fourth Street, Suite 1071
Louisville, KY 40202
Telephone: (502) 333-6019
Facsimile: (502) 416-0022

ATTORNEYS FOR PLAINTIFFS